# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ANDREW ALEXANDER,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No.  CIV-15-580-HE** |
| ) | |
| **TIM WILKERSON,** ) | |
| ) | |
| **Respondent.** ) | |

## REPORT AND RECOMMENDATION

Petitioner, appearing pro se, seeks a writ of habeas corpus under 28
U.S.C. § 2254.  Doc. 1.  United States District Court Judge Joe Heaton
referred the matter to the undersigned Magistrate Judge for initial
proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  Respondent filed a
response, Doc. 9, the jury-trial transcripts (TR) and original record (OR), Doc.
11, and supplemental jury-trial exhibits (TR Ex.), Doc. 13.[1]  Petitioner did not
reply.  For the reasons set forth below, the undersigned recommends the
court deny habeas relief.

---

[1]     Citations to the parties' pleadings and attached exhibits will refer to
this Court's CM/ECF pagination.  Citation to the state court records will refer
to the original pagination.

## I.    Introduction.

The State charged Petitioner, in a fifth-amended Information, with lewd molestation, OR 136,[2] and a jury in Greer County, Oklahoma, Case No. CF-2011-44, convicted Petitioner and sentenced him to thirty-five years' imprisonment.  TR 1040.  Petitioner appealed, and the Oklahoma Court of Criminal Appeals (OCCA) affirmed his conviction.  Doc. 9, Ex. 3, at 1-8.

## II.   Petitioner's claims.

Petitioner raises ten claims for relief.  In Grounds One, Two, Three, and Four, Petitioner challenges the trial court's admission of allegedly improper evidence.  Doc. 1, at 5-40.  In Grounds Five and Six, Petitioner alleges the trial court erred in failing to instruct the jury:  (1) on a lesser-included offense, *id.* at 41-42, and (2) that he would have to register as a sex offender upon conviction.  *Id.* at 43-48.  In Ground Seven, Petitioner challenges the evidence's sufficiency, *id.* at 49-55, and in Ground Eight, he raises ineffective assistance of counsel.  *Id.* at 56-58.  In Ground Nine, Petitioner claims his sentence is excessive.  *Id.* at 59-60.  Finally, in Ground Ten, Petitioner challenges the alleged accumulation of error.  *Id.* at 61-62.

---

[2]     Petitioner suggests the jury convicted him of lewd molestation and forcible oral sodomy.  Doc. 1, at 1.  At one point the State had charged Petitioner with forcible oral sodomy, OR 28, but it later dropped that charge with the fourth- and fifth-amended Informations.  *Id.* at 34, 136.

The undersigned has elected to address Petitioner's sufficiency of the evidence claim (Ground Seven) first.

## III. The trial evidence.

In May 2011, Petitioner was living with Mike and Belinda Ybarra and their daughter, M.Y.  TR 662-64, 714-16.  M.Y. was eleven-years old, but functioned around "five years behind on age."  *Id.* at 576-77.

On May 2, 2011, Mrs. Ybarra came home early and could not find M.Y. in the house.  *Id.* at 704, 763.  When she eventually located her, M.Y. said she had been in the bathroom, but acted oddly – refusing to look her mother in the eye and fiddling with her fingers.  *Id.* at 704-05, 708-09, 764-65. Suspicious, Mrs. Ybarra questioned M.Y. about Petitioner's whereabouts and then started searching the house.  *Id.* at 705, 709-10, 764-65.  Mrs. Ybarra entered the bathroom M.Y. regularly used, and found the lights off.  *Id.* at 705.  She entered the bathroom and turned on the lights, and Petitioner "popped out from the shower."  *Id.*  Mrs. Ybarra asked Petitioner why he had been in the bathroom "with [M.Y.]," and Petitioner "stuttered about five times," telling her "over and over" that "[h]e was in there first."  *Id.*

Mrs. Ybarra immediately took M.Y. to her aunt's house next door, and then returned to question Petitioner again.  *Id.* at 706.  Again, Petitioner would only repeat that he "was in there first."  *Id.*  Based on M.Y.'s acting nervous, finding Petitioner in the dark bathroom shower fully dressed, and

Petitioner's inability to explain the situation, Mrs. Ybarra was concerned and called the police. *Id.* at 706, 708-10.

Mrs. Ybarra then returned to her aunt's house and questioned M.Y. about what happened in the bathroom. *Id.* at 768. M.Y. told her mother she entered the bathroom and Petitioner "popped out of the shower" and said "boo." *Id.* at 743, 768. Petitioner then "asked her to get in the shower with him." *Id.* at 743, 768. M.Y. told her mother that when she complied, Petitioner "touched her in her private area . . . touching her [and] rubbing her." *Id.* at 743. According to former Chief of Police Bray Woodress, M.Y. relayed this incident in a substantially similar manner when she spoke to a Greer County victim's advocate later that afternoon, stating she had been brushing her teeth in the bathroom when Petitioner "pushed her in the shower, and began rubbing her private areas." *Id.* at 199, 201-02.

M.Y. was upset the next morning, and Mrs. Ybarra and M.Y.'s special education teacher, Mrs. Norris,[3] agreed Mrs. Norris would talk to M.Y. about the incident. *Id.* at 593-94, 778. When Mrs. Norris asked M.Y. to tell her "what's going on," M.Y. said Petitioner "had been touching her." *Id.* at 611.

---

[3] When she began teaching M.Y., Mrs. Norris's name was Shelley Anderson. TR 568. She then married, changing her name to Shelley Norris. *Id.* Mrs. Norris is periodically referred to as Ms. Anderson in the transcript.

M.Y. told Mrs. Norris she had gone to the bathroom to brush her teeth and Petitioner had "made her get in the shower with him" and "in the shower he had touched her . . . in her private parts with her clothes on." *Id.* at 612. M.Y. then told Mrs. Norris Petitioner had "been touching me in my private parts and then he makes me touch him in his private parts[.]" *Id.*

Social worker Amy Baum interviewed M.Y. a few days later. M.Y. told Ms. Baum she had been in the bathroom brushing her teeth when Petitioner came in and asked her to get in the shower. TR Ex. 21, at 7:00-7:40, 9:33-48. M.Y. said Petitioner began "humping" her and touching her between her legs. *Id.* at 5:49, 8:46. M.Y. also explained Petitioner watches her get out of the shower and go to the bathroom through a grated window above the bathroom door. *Id.* at 6:17-50.

At trial, M.Y. repeated her allegation that Petitioner usually watches her in the bathroom through a grate above the bathroom door. TR 938-39. Mrs. Ybarra confirmed that there is an open grate above the bathroom door, and testified she had caught Petitioner watching her sister through the same opening. *Id.* at 773-75. M.Y. further testified that on the date in question, she was in the bathroom brushing her teeth and Petitioner came in, turned off the lights, and began touching her on her "butt" and "privates." *Id.* at 938-43.

Finally, the State introduced testimony from Wayne Gilley. Mr. Gilley testified he had been incarcerated in the Greer County Jail in 2011 and had been celled with Petitioner. *Id.* at 420-22. According to Mr. Gilley, Petitioner admitted he had hidden in M.Y.'s shower and waited for her to enter. *Id.* at 424. Petitioner stated he "grabbed her arm and . . . was going to make a woman out of her." *Id.* at 425. Mr. Gilley admitted he had faced numerous charges in the past, but claimed the State had not promised him anything to testify. *Id.* at 428-31.

## IV. Standard of review for habeas relief.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). A petitioner is entitled to federal habeas relief only if that merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). This standard

"reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established federal law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Owens*, 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different'

and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted). So, to qualify for habeas relief on this prong, the petitioner must show "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted). "In other words, 'so long as fairminded jurists could disagree on the correctness of the state court's decision,' habeas relief is unavailable." *Id.* at 1243 (citation omitted); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

## V. Analysis.

### A. Ground Seven: Petitioner's sufficiency-of-the-evidence claim.

Petitioner alleges the evidence was insufficient to support his conviction because M.Y.'s testimony was inconsistent, improbable, and lacked corroboration. Doc. 1, at 49-55. The OCCA rejected this argument on direct appeal, and the undersigned finds the decision was a reasonable application of Supreme Court law. *See* Doc. 9, Ex. 3, at 6.

#### 1. Clearly established law.

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia*. 443 U.S. 307, 324 (1979); *see Lott v. Trammell*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing *Jackson* provided "the clearly established law applicable to [an insufficient evidence] claim"). So, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. *Jackson*'s standard for evidence sufficiency "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

### 2. The elements of lewd molestation.

To convict Petitioner of lewd molestation, the State had to prove M.Y. was under sixteen years of age, that Petitioner was three years older than M.Y., and that he knowingly and intentionally looked upon, touched, mauled, or felt her body or private parts "in any lewd or lascivious manner." *Belvin v. Addison*, 561 F. App'x 684, 686 (10th Cir. 2014) (citing Okla. Stat. tit. 21, § 1123(A)(2)); *see also* Okla. Unif. Jury Instrs. (criminal) 4-129.

### 3. The OCCA's ruling.

Rejecting Petitioner's claim on direct appeal, the OCCA held that "considering the positive testimony of the victim, the consistency of her allegations over time, corroborating evidence from the victim's mother, and [Petitioner's] incriminating statement to a cell-mate, a rational juror could find, beyond a reasonable doubt, that [Petitioner] committed the charged crime." Doc. 9, Ex. 3, at 6.

### 4. Analysis.

Petitioner's sufficiency challenge contains two, intertwined claims. First, he complains M.Y.'s statements were so inconsistent and improbable that they required corroboration under Oklahoma law, which he alleges did not occur. Doc. 1, at 51-54. Second, Petitioner argues M.Y.'s statements – standing alone − were simply too inconsistent and improbable to support a

conviction. *Id.* at 54-55. The undersigned finds no merit in Petitioner's arguments.

Although Petitioner presents two arguments, the issue for this Court is a single one. That is, "[n]o direct Supreme Court precedent requires corroboration of child witness testimony." *Parker v. Scott*, 394 F.3d 1302, 1314 (10th Cir. 2005). So, the only question for this Court is whether the OCCA "unreasonably applied *Jackson* in finding [M.Y.'s] testimony sufficient to convict." *Id.* at 1315. In so deciding, the court should remember "the responsibility of adjudging the child's credibility belonged to the trier of fact, not to [the court]." *Id.*

The jury heard evidence Petitioner and M.Y. were in the bathroom together and he rubbed her genitals in a manner M.Y. described as "humping." *See supra* § III. The jury heard that M.Y. related these substantially consistent statements to the Greer County victim's advocate, Mrs. Ybarra, Mrs. Norris, and Ms. Baum. *See id.* Moreover, M.Y. was thoroughly cross-examined, and Petitioner's attorney highlighted the inconsistencies in M.Y.'s statements, as well as her history for untruthfulness. TR 952-90.

Petitioner's claim stems primarily from the jury's acceptance of M.Y.'s statements – both those made at trial and related to other witnesses – but "[t]he jury was in a position to credit or discount the child's testimony and

weigh the inconsistencies in light of her age and the passage of time." *Parker*, 394 F.3d at 1315. That determination "is distinctly within the realm of the jury, which we cannot enter on AEDPA review." *Id.*

In sum, viewing evidence in a light most favorable to the State, a rational trier of fact could have concluded that, despite any inconsistencies in M.Y.'s statements, there was sufficient evidence to find that Petitioner knowingly and intentionally touched M.Y. in a lewd or lascivious manner. *See supra* § V(A)(2).[4] So, the undersigned finds the OCCA reasonably applied *Jackson* in rejecting Petitioner's claim on direct appeal.

### B. Ground One: Petitioner's alleged improper-vouching claim.

In Ground One, Petitioner alleges that his trial was rendered fundamentally unfair when four witnesses vouched for M.Y.'s truthfulness, and one witness called Petitioner's truthfulness into question. Doc. 1, at 5-12. The undersigned recommends the court deny relief on Ground One.

#### 1. Petitioner's vouching examples.

Petitioner first points to Ms. Lauren Donaldson's statements. Ms. Donaldson, a physician's assistant, examined M.Y. and testified to her

---

[4]     The parties stipulated that in May 2011, Petitioner was forty-nine years of age and M.Y. was eleven years of age. TR 415-16, 418.

findings. The State asked Ms. Donaldson if she "watch[es] for things that would maybe indicate that [an allegation of sexual abuse] is being made up [or] fabricated" with "some motivation to gain an advantage in a custody dispute." TR 336. Ms. Donaldson replied "Yes," but then said "that is something that very rarely happens, where a child makes false allegations." *Id.* She also commented "[children] rarely lie because of the consequences that happen after they admit sexual abuse, . . . the trauma of having to talk in front of a jury or in the courtroom . . . ." *Id.* at 339. Ms. Donaldson noted "it's very hard to lie about what you don't know." *Id.* Finally, the physician's assistant stated "the disclosures that [M.Y.] made . . . [were enough] for me to believe her and her statement as to what happened." *Id.* at 347. The trial judge instructed the jury to disregard Ms. Donaldson's last statement. *Id.* at 347-48.

Petitioner also challenges Ms. Baum's testimony. After Ms. Baum described her interview methods and her interview with M.Y., the State asked her: "[W]hat kind of red flags did you see in this case and you're like 'wait a minute, something – this is wrong and this may indicate that this has been a wrongful accusation[?]'" *Id.* at 502. Ms. Baum responded, "[t]here wasn't anything that I identified that made me think it was – that it was going down that path of wrongful." *Id.* Later, when asked if she sees kids exaggerate, Ms. Baum stated, "rarely, when I interview kids of [M.Y.'s] age

and developmental level, do I really think that they're exaggerating anything that they've told me." *Id.* at 519. Ms. Baum then confirmed "[t]here wasn't anything that I saw that made me think [M.Y.] was exaggerating." *Id.*

Finally, Petitioner challenges Mr. and Mrs. Ybarra's testimony. When asked if he had ever been worried about M.Y. "telling lots of lies," Mr. Ybarra said simply, "[s]he doesn't lie to me." *Id.* at 688-89. Mrs. Ybarra, referring to M.Y.'s grandfather allegedly abusing M.Y., said she believed the early abuse occurred "[b]ecause she's my daughter." *Id.* at 750. When asked if Petitioner has a speech impediment that causes him to stutter, Mrs. Ybarra said "[n]o" and then said "[o]ther than when he lies, that's the only time he stutters." *Id.* at 714.

### 2. Clearly established law.

The Tenth Circuit does not consider one witness improperly vouching for another witness "to impact an express constitutional right." *United States v. Harlow*, 444 F.3d 1255, 1266 (10th Cir. 2006). Further, the Supreme Court has never held that "vouching testimony itself violates the Due Process Clause." *Parker*, 394 F.3d at 1310. The absence of Supreme Court precedents on the issue would ordinarily preclude habeas relief on a theory involving testimonial vouching. However, the Tenth Circuit Court of Appeals has recognized vouching can compromise the trial's fairness and thus implicate the Fourteenth Amendment's Due Process Clause. *See id.*

14

For a due process inquiry, the Supreme Court articulated the test in *Lisenba v. California*, 314 U.S. 219 (1941):

> As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Id.* at 236; *see also Parker*, 394 F.3d at 1309-10 (holding that for a claim involving improper witness vouching, the court applies the Supreme Court's "general due process standard" it articulated in *Lisenba v. California*). "An inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings, including the strength of the evidence against the [petitioner]." *Hanson*, 797 F.3d at 843.

### 3. The OCCA's ruling.

On direct appeal, Petitioner alleged an unfair trial due to witness vouching, and the OCCA rejected the claim finding:

> Two experts (a physician's assistant and a forensic interviewer) related their general experience in assessing children's accounts of sexual abuse. These witnesses explained what kinds of things they look for to determine if they believe the account is credible. Their opinions were couched in general terms (not about the victim in this case specifically, and not categorical claims that children never lie). These general comments were helpful to the jury because they explained the experts' methods and goals. The victim's parents also testified that they believed their daughter's claims, but such obvious expressions of witness bias could hardly have surprised or improperly influenced the jury. The one true instance of "vouching" – an expert given an opinion of the victim's

credibility in this particular case – was met with a timely objection, and the trial court admonished the jury to disregard the answer.

Doc. 9, Ex. 3, at 2-3.

### 4. Analysis.

The undersigned finds the OCCA reasonably applied Supreme Court precedent when it rejected Petitioner's vouching arguments. As the OCCA noted, Ms. Donaldson's and Ms. Baum's statements were generally generic and did not directly vouch for M.Y.'s truthfulness. *See supra* § V(B)(1). And when Ms. Donaldson made such a statement, the trial court admonished the jury to disregard her comment. *See id.* A jury is "presumed to follow curative instructions." *United States v. Morgan*, 748 F.3d 1024, 1042 (10th Cir. 2014). Finally, Mr. and Mrs. Ybarra, as M.Y.'s parents, had an obvious bias towards M.Y. and against Petitioner. The trial court also instructed the jury it may consider a witness's relationship to M.Y. and any biases that witness may have in assessing the evidence. OR 160. So, when viewed against the evidence against Petitioner, *see supra* § III, the undersigned finds the OCCA reasonably concluded the alleged vouching testimony did not render Petitioner's trial fundamentally unfair.

**C. Grounds Two and Three: Petitioner's claims challenging the trial court's admission of evidence.**

In his second and third proposition for relief, Petitioner claims the State improperly introduced evidence of other criminal activities or bad acts. In Ground Two, Petitioner argues the evidence was admitted in violation of Oklahoma law because it: (1) did not fall within the tailored confines of *Burks v. State*, 594 P.2d 771 (Okla. Crim. App. 1979)[5], and (2) not all the bad acts were listed in the State's *Burks* notice.[6] Doc. 1, at 15-22. In Ground Three, Petitioner alleges: (1) Okla. Stat. tit. 12, §§ 2413 and 2414[7] are unconstitutional, and (2) the trial court failed to properly consider the relevant §§ 2413/2414 factors before admitting the bad acts evidence. *Id.* at

---

[5] *Burks* was overruled on other grounds by *Jones v. State*, 772 P.2d 922, 925 (Okla. Crim. App. 1989)

[6] Under Oklahoma law, "[e]vidence of other offenses may be admissible where it tends to establish motive, intent, absence of mistake or accident, identity or a common scheme or plan which embraces the commission of two or more crimes so related to each other that proof of one tends to establish the other." *Burks*, 594 P.2d at 772. When the State intends to introduce such evidence, it must give the defendant notice (generally referred to as a *Burks* notice). *Id.* at 774-75.

[7] In some circumstances, the State may introduce prior bad acts of sexual assault/molestation in a case alleging sexual assault/molestation. *See* Okla. Stat. tit. 12, §§ 2413, 2414.

24-30. Petitioner alleges because the State improperly introduced this evidence, he was "denied a fair trial." *Id.* at 15, 24.

## 1. The evidence Petitioner challenges.

The jury heard evidence that when M.Y. disclosed Petitioner's actions in the bathroom to Ms. Donaldson and Mrs. Norris, she also said Petitioner: (1) is "always touching me down there and touching my butt," TR 332-33; (2) "makes me put my mouth on his private, but I don't," *id.* at 333; and (3) makes her "touch his privates." *Id.* at 614. The jury also saw M.Y.'s video-taped interview with Ms. Baum, where she described similar incidents. *Id.* at 511; TR Ex. 21. M.Y. told Mrs. Norris:

> I don't like it when [Petitioner] picks me up and throws me on the bed. . . . [H]e'll take my pants off and my panties are on, but he touches my privates with my panties on . . . but he takes his pants and his underwear off and he makes me touch his privates and he makes me put my mouth on his privates[.]

TR 614. Finally, the jury heard Petitioner often used a window above the bathroom doors to spy on females in the house. *Id.* at 200, 233-39, 612-13, 773-76, 938-39.

## 2. Clearly established law.

Petitioner's arguments focus on the State's introduction of evidence in violation of Oklahoma law. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Nevertheless, when a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Ochoa v. Workman*, 669 F.3d 1130, 1145 (10th Cir. 2012) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see also Myers v. Workman*, No. 07-CV-00131-JHP-TLW, 2011 WL 4606699, at *44 (N.D. Okla. Sept. 30, 2011) (unpublished order) ("[T]he clearly established federal law governing habeas review of admission of . . . evidence is found in the Due Process Clause of the Fourteenth Amendment which provides a mechanism for relief when evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair." (internal quotation marks and citation omitted)). So, the court's concern is not whether the trial court admitted the relevant evidence in violation of Oklahoma law, but whether the OCCA reasonably determined the evidence did not render Petitioner's trial fundamentally unfair. *See, e.g., Ochoa*, 669 F.3d at 1144 (holding that the question of whether evidence renders a trial fundamentally unfair is made "without regard to whether the evidence was properly admitted pursuant to state law" (citing *Estelle*, 502 U.S. at 67-68)).

### 3. The OCCA's rulings.

The OCCA held that evidence of Petitioner's prior sexual assault acts was "admissible as part of an ongoing pattern of abuse against the same victim," and his other "incidents of a suspicious nature (*i.e.*, where [Petitioner] was caught peeking into the bathroom when females in the household were using it) were relevant as they tended to show [Petitioner] had a lascivious intent regarding the charged incident." Doc. 9, Ex. 3, at 3-4. The OCCA further noted "[a]t several points during the trial, the court cautioned the jury on the limited use of this evidence." *Id.* at 4. In sum, the OCCA found "no error in the admission of this evidence under 12 O.S. § 2404." *Id.* The OCCA then found Petitioner's challenges arising under Okla. Stat. tit. 12, § 2414 were "moot, because the evidence in question was never offered or admitted pursuant to that provision of the Evidence Code." *Id.*[8]

Although the OCCA ruled only on the evidence's admissibility under Oklahoma law, it reviewed Petitioner's claim for plain error. *Id.* at 3. "Oklahoma's plain-error test is rooted in due process." *Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2005). "Because the OCCA applied the same

---

[8] Okla. Stat. tit. 12, § 2413 applies to "sexual assault" offenses and Okla. Stat. tit. 12, § 2414 applies to "child molestation" offenses. So, only Okla. Stat. tit. 12, § 2414 would have been applicable to Petitioner's case.

test we apply to determine whether there has been a due-process violation, [the court] must defer to its ruling unless it 'unreasonably applied' that test." *Id.* at 1125 (citation and original brackets omitted)).

### 4. Analysis.

The undersigned first agrees with the OCCA that Petitioner's challenges involving Okla. Stat. tit. 12, §§ 2413 and 2414 are moot. There is nothing in the record to demonstrate that the trial court admitted the relevant evidence under either specialized statute. So, the court need not address Petitioner's claims involving the alleged unconstitutionality of these state statutes.

The undersigned further finds the OCCA reasonably determined the evidence did not render Petitioner's trial fundamentally unfair. First, the evidence was relevant to show Petitioner's touching M.Y. was "lewd or lascivious," *supra* § V(A)(2), rather than unintentional or accidental. *See* Okla. Stat. tit. 12, § 2404(B) (stating that evidence of bad acts is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident"). Further, as addressed above, the evidence against Petitioner relating directly to the May 2, 2011, incident was sufficient to prove Petitioner's guilt. *See supra* §§ III, V(A). Finally, the trial court *repeatedly* instructed the jury they could consider the bad acts evidence as proof of Petitioner's motive or intent, but not his guilt or innocence of the

crime charged.  TR 314, 486, 567-68, 667, 701; OR 167.  With these factors,

Petitioner has not shown the OCCA unreasonably applied federal law when it

determined that the evidence did not render Petitioner's trial unfair.  *See*

*Eizember v. Trammell*, CIV-08-337-C, 2013 WL 6670275, at *23 (W.D. Okla.

Dec. 18, 2013) (unpublished order) ("Considering Petitioner's [allegation that

the trial court admitted bad acts evidence] in light of the entire trial

proceeding, including the presented evidence and the given instructions,

Petitioner has simply not shown that [the OCCA unreasonably applied

federal law in holding that the evidence did not render petitioner's trial

fundamentally unfair]."), *aff'd on other grounds*, __ F.3d__, No. 14-6012, 2015

WL 5332960 (10th Cir. Sept. 15, 2015); *Pena v. S. Hartley*, No. 12-cv-01363-

WYD, 2015 WL 2439347, at *7 (D. Colo. May 20, 2015) (unpublished order)

(holding petitioner failed to "demonstrate his trial was fundamentally unfair"

based on the admission of evidence of prior bad sexual acts where the

evidence was relevant to the issue of motive and the trial court instructed the

jury on the limited use of the evidence).

### D. **Ground Four:  Petitioner's challenge to the trial court's admission of child hearsay.**

Under Oklahoma law, the trial court may admit hearsay statements

from a child under the age of thirteen if various requirements are met.  *See*

Okla. Stat. tit. 12, § 2803.1.  As documented above, several witnesses

repeated M.Y.'s statements at trial. *See supra* § III. Petitioner alleges the trial court erred in admitting the child's hearsay statements because the judge failed to hold an "indicia of reliability" hearing for every witness and the State failed to give notice it intended to introduce M.Y.'s statements through several witnesses. Doc. 1, at 33-39. Petitioner also claims the trial court improperly found the statute's requirements had been met for several witnesses. *Id.* at 38-39. According to Petitioner, Okla. Stat. tit. 12, § 2803.1's notice and hearing requirements are "mandatory" and departure from the requirements prevents "a defendant's right to cross-examination" and "runs afoul of the Fourteenth Amendment . . . ." *Id.* at 37.

### 1. Clearly established law.

As noted above, this Court is generally unconcerned with whether the trial court correctly applied Oklahoma law when it admitted evidence. *See supra* § V(C)(2). However, Petitioner's claim invokes the Sixth Amendment's Confrontation Clause, which "provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' This right of confrontation has been applied to the states through the Fourteenth Amendment." *Myatt v. Hannigan*, 910 F.2d 680, 682 (10th Cir. 1990) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)). Under this constitutional dictate, the trial court may admit "a witness's out-of-court statement," i.e., hearsay, only if "it has adequate indicia of reliability."

*Crawford v. Washington*, 541 U.S. 36, 42 (2004). That said, "Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial." *Brown v. Uphoff*, 381 F.3d 1219, 1226-27 (10th Cir. 2004) (citation omitted).

### 2. The OCCA's ruling.

On direct appeal, the OCCA held that "all of the victim's extrajudicial statements were materially consistent with one another, with her preliminary hearing testimony, and with her testimony at trial. [Petitioner] had an opportunity to confront and cross-examine the victim about any perceived inconsistencies." Doc. 9, Ex. 3, at 5. Based on that, the OCCA held: "The trial court's rulings as to the trustworthiness of some of the statements . . . was not an abuse of discretion; and any omission in failing to make such formal findings as to other statements was harmless beyond a reasonable doubt." *Id.*

### 3. Analysis.

#### a. Petitioner's claims that M.Y.'s statements were not reliable.

The trial court ruled M.Y.'s statements made to Mrs. Ybarra, Mrs. Norris and Ms. Baum were sufficiently reliable. TR 4-6, 597-609, 720-42. Petitioner alleges the trial court made an incorrect decision under Okla. Stat. tit. 12, § 2803.1(B); however, the narrow question for this Court is whether

the OCCA reasonably applied federal law in determining M.Y.'s hearsay statements were sufficient reliable under the Confrontation Clause. The undersigned finds it did.

The OCCA made factual findings that: (1) M.Y.'s "extrajudicial statements were materially consistent with one another, with her preliminary hearing testimony, and with her testimony at trial"; and (2) Petitioner "had an opportunity to confront and cross-examine the victim about any perceived inconsistencies." Doc. 9, Ex. 3, at 4. "In evaluating the reliability of the hearsay statements, we presume that the factual findings of the [OCCA] are correct." *Myatt*, 910 F.2d at 685 (citing 28 U.S.C. § 2254(d)). Petitioner must present clear and convincing evidence to overcome that presumption. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not carried his burden.

As noted above, M.Y.'s out-of-court statements that Petitioner touched her private area, through her clothes, while they were in the bathroom shower, remained materially consistent witness-to-witness and she testified accordingly. *See supra* § III. And, Petitioner's attorney thoroughly cross-examined M.Y. and every child-hearsay witness. TR 229-43, 249-51, 380-401, 407-10, 524-38, 550-52, 622-643, 652-54, 674-95, 732-42, 760-98, 808-811, 952-90. This supports an adequate indicia of reliability, and the OCCA reasonably applied Supreme Court law when it rejected this portion of

Petitioner's claim. *See, e.g., Williamson v. Parker*, No. CIV-13-899-D, 2015 WL 1061131, at *1, *17-18 (W.D. Okla. Mar. 10, 2015) (unpublished order adopting report and recommendation) (finding the OCCA reasonably held admission of child hearsay did not violate the Confrontation Clause where child's statements had been consistent and petitioner had "thoroughly cross-examined every child-hearsay witness").

> **b.** **Petitioner's claims that the trial court failed to inquire about the reliability of M.Y.'s statements for some witnesses.**

For Mr. Woodress, Ms. Donaldson, and Mr. Ybarra, the trial court failed to make a separate inquiry regarding the reliability of M.Y.'s statements. However, the OCCA found that any error in the trial court's failure to formally certify the reliability of M.Y.'s statements as to every witness was "harmless beyond a reasonable doubt." Doc. 9, Ex. 3, at 5. This language mirrors the standard in *Chapman v. California*, 386 U.S. 18 (1967), which teaches a constitutional error may be found harmless if it is "harmless beyond a reasonable doubt." 386 U.S. at 24. However, on habeas review, this Court "assess[es] the prejudicial impact of constitutional error . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)] whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless

beyond a reasonable doubt' standard set forth in *Chapman*, . . . ." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

The undersigned finds no grounds for relief under this standard. Given M.Y.'s consistency regarding the material facts, the trial court's finding of reliability on M.Y.'s similar statements to other witnesses, Petitioner's opportunity to cross-examine every witness, including M.Y., and the evidence's sufficiency, the only reasonable conclusion is that any error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 622 (citation omitted). So, habeas relief is not warranted on this claim.

### E. Ground Five: Petitioner's claim that the trial court erred in refusing to instruct on a lesser-included offense.

Petitioner additionally seeks habeas relief based on the trial court's failure to instruct on the lesser-included offense of domestic assault and battery. Doc. 1, at 41-42. On direct appeal, the OCCA held: "Under the evidence presented at trial, no rational juror could have acquitted [Petitioner] of [lewd molestation] and convicted him of [domestic assault and battery]." Doc. 9, Ex. 3, at 5.

The threshold question is whether the OCCA's holding was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See supra* § IV. Absent Supreme Court law, the OCCA's holding

cannot be either contrary or unreasonable, so the lack of Supreme Court law is fatal to a petitioner's request for habeas relief. *See House*, 527 F.3d at 1017. That circumstance is present here.

"The Supreme Court has never recognized a federal constitutional right to a lesser-included offense instruction in non-capital cases, and neither has this court." *Hall v. Ezell*, 499 F. App'x 769, 771 (10th Cir. 2012) (citation and internal brackets omitted). So, the trial court's failure to instruct on a lesser-included offense cannot justify habeas relief. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) ("Our precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser-included offense instruction." (citation omitted)); *Hall*, 499 F. App'x at 771 ("[Petitioner] raises no colorable basis for habeas relief based on the failure to include a lesser-included offense instruction.").

**F.    Ground Six: Petitioner's claim that the trial court failed to instruct the jury that on conviction, he would have to register as a sex offender.**

In Ground Six, Petitioner seeks habeas relief because the trial court failed to instruct the jury that on conviction, he would have to register as a sex-offender. Doc. 1, at 45-48. The OCCA rejected the claim, holding: "there is nothing about mandatory sex-offender registration which would have assisted the jury in assessing appropriate punishment." Doc. 9, Ex. 3, at 6.

The court should reject Petitioner's sixth argument based on the reasoning above. *See supra* § V(E). Petitioner points to no Supreme Court authority – and the undersigned finds none – that requires a trial court to instruct the jury about a defendant's requirement to register as a sex offender upon conviction. Indeed, there is not even a "federal requirement for instructing jurors about parole eligibility in a non-capital case." *See O'Neal v. Province*, 415 F. App'x 921, 925 (10th Cir. 2011). The lack of Supreme Court precedent is fatal to Petitioner's claim. *See House*, 527 F.3d at 1017.

## G. Ground Eight: Petitioner's ineffective assistance of counsel claim.

In his eighth ground for relief, Petitioner alleges his attorney provided constitutionally ineffective assistance when she failed to object to: (1) improper vouching, (2) M.Y.'s hearsay statements, and (3) prior bad acts evidence. Doc. 1, at 56-58.

### 1. Clearly established law.

Under clearly established law, Petitioner must demonstrate his attorney's performance was deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 690-91 (1984). The court will only consider an attorney's performance "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* at 690. "[P]rejudice" involves "a

reasonable probability that, but for counsel's unprofessional errors, the result of the [direct appeal] would have been different." *Id.* at 694.

### 2. The OCCA's ruling.

The OCCA rejected Petitioner's ineffective assistance of counsel claim on direct appeal on grounds his attorney's conduct was not deficient. The state court found only one witness actually vouched for M.Y.'s honesty and counsel *did* object to that testimony. Doc. 9, Ex. 3, at 6. Then, the OCCA held that because the trial court properly allowed the child hearsay statements and prior bad acts evidence, counsel was not deficient in failing to object. *Id.*

### 3. Analysis.

The undersigned finds the OCCA reasonably applied *Strickland* in rejecting Petitioner's ineffective counsel claims.

### a. Counsel's failure to object to vouching.

As addressed above, the two experts (Ms. Donaldson and Ms. Baum) did not directly vouch for M.Y.'s truthfulness, and Mr. and Mrs. Ybarra's biases were obvious. *See supra* § V(B)(1), (4). So, the undersigned cannot say the OCCA unreasonably applied *Strickland* when it held that counsel's failure to object to these statements did not fall outside the wide range of professionally competent assistance. *See, e.g., Williams v. Trammell*, 782 F.3d 1184, 1202 (10th Cir. 2015) (holding the OCCA reasonably applied

*Strickland* where it found trial counsel "was not deficient for failing to object" to relatively insignificant evidence). And, Petitioner's attorney objected the one instance of true vouching. *See supra* § V(B)(1), (4). So, the court should deny habeas relief on this claim.

### b. Counsel's failure to object to hearsay statements and prior-bad-acts evidence.

The OCCA held the trial court properly admitted M.Y.'s out-of-court statements and prior-bad-acts evidence under Oklahoma law, and the undersigned finds the state court reasonably concluded the evidence did not render Petitioner's trial fundamentally unfair. *See supra* § V(C)(3), (4), (D)(2), (3). With this, the undersigned must find the OCCA reasonably held trial counsel was not deficient in failing to object to the admissible and otherwise fair evidence. *See, e.g., Williams*, 782 F.3d at 1203 (holding where the relevant evidence was properly admitted at trial, "the OCCA reasonably could have concluded that [the] lawyer's failure to object . . . was not deficient performance").

## H. Ground Nine: Petitioner's excessive-sentence claim.

The jury fixed Petitioner's sentence at thirty-five years imprisonment, TR 1040, and the trial judge entered the recommended punishment. OR 207. According to Petitioner, this sentence is excessive. Doc. 1, at 60. Due to the brevity of Petitioner's argument, it is not entirely clear whether he raises a

constitutional challenge to his sentence. *Id.* However, in an abundance of caution, the undersigned has liberally construed the claim as arising under the federal constitution.

### 1. Clearly established law.

The Supreme Court has clearly established "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003) (citation omitted). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* (citation and internal brackets omitted). The court "afford[s] wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Generally then, habeas review "ends once [the court] determine[s] the sentence is within the limitation set by statute." *Id.*; *see also Britt v. Embry*, 302 F. App'x 774, 783 (10th Cir. 2008) (holding because life without the possibility of parole is within the statutory range for first-degree murder, "habeas review of [the] sentence" was complete).

### 2. The OCCA's ruling.

The OCCA rejected Petitioner's excessive sentence claim, holding: "given [Petitioner's] history of felony convictions, the sentence imposed by the jury is not shocking to the conscience." Doc. 9, Ex. 3, at 7.

### 3. Analysis.

Petitioner was convicted of lewd molestation after two prior felony convictions. OR 137, 179. In Oklahoma, his punishment range was twenty-years to life imprisonment. *Id.* at 179; *see also* Okla. Stat. tit. 21, §§ 51.1(B), 1123(A); *id.* tit. 57, § 571(2)(cc). Because Petitioner's thirty-five year sentence falls within the statute's limitation, the habeas review ends.

## I. Ground Ten: Petitioner's allegation of cumulative error.

In his final argument, Petitioner claims the accumulation of errors deprived him of a fair trial. Doc. 1, at 62.

### 1. Clearly established law.

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and acknowledged its own lack of published precedent. *See Cole v. Trammell*, 755 F.3d 1142, 1177 (10th Cir. 2014); *see also Eizember*, 2015 WL 5332960, at *14, n.8 (noting "the circuits are split on 'whether the need to conduct a cumulative-error analysis is clearly established federal law' for AEDPA purposes—and this court's position on the question is murky at best" (citation

omitted)).  However, the court has also noted "that Tenth Circuit 'precedent may very well signal where our court has come down on the issue – *viz.*, that cumulative-error analysis is clearly established law.'"  *Cole*, 755 F.3d at 1177 n.14 (citation omitted).

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness."  *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (citations and internal quotations omitted); *see also Ochoa*, 669 F.3d at 1146 ("In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors . . . .").  In this analysis, the court considers any constitutional errors along with the impact of any constitutional claims that "have been individually denied for insufficient prejudice."  *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (holding because a claim involving "substantive prejudice components essentially duplicate the function of harmless-error review," "such claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice").

### 2. The OCCA's ruling.

The OCCA rejected Petitioner's cumulative error claim on direct appeal, reasoning, because it "found no error in the proceeding propositions, there is no error to accumulate." Doc. 9, Ex. 3, at 7.

### 3. Analysis.

The undersigned found one potential constitutional error that was otherwise harmless, *see supra* § V(D)(3)(b), and concluded the OCCA reasonably found the alleged vouching and trial court's admission of hearsay and prior bad acts evidence did not render Petitioner's trial fundamentally unfair. *See id.* § V(B)(4), (C)(4). Considering these claims in the aggregate, along with the sufficient evidence of Petitioner's guilt, *see id.* §§ III, V(A), the undersigned finds no valid basis for concluding the OCCA unreasonably applied federal law in rejecting this claim on direct appeal. So, habeas relief is not warranted.

## VI. Recommended ruling and notice of right to object.

For the reasons discussed above, the undersigned recommends the court deny the petition for habeas relief.

The undersigned advises the parties of their right to object to this report and recommendation by November 16, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and

recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

Entered this 27th day of October, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE